In re Eddie Lamar WILLIAMS, Debtor.

Wells Fargo Financial Georgia, Inc., successor by merger to Wells Fargo Financial Acceptance Georgia, Inc., and Lee Ringler, Esq., Movants,

v.

Barnee C. Baxter, Chapter 13 Trustee, Respondent.

No. 07–10298.

United States Bankruptcy Court, S.D. Georgia, Augusta Division.

March 28, 2008.

Lee Ringler, Lee Ringler Law Offices, Augusta, GA, for Debtor.

### *ORDER*

SUSAN D. BARRETT, Bankruptcy Judge.

This matter comes before the Court on two motions. The first is a "Motion for Relief from Stay or in the Alternative Adequate Protection Payments" filed by Wells Fargo Financial Georgia, Inc. ("Wells Fargo") seeking alternatively, relief from the automatic stay, adequate protection payments with a superpriority, or equal monthly payments. In addition, Debtor's attorney has filed a "Motion by Attorney for Debtor for Order to Compel Payments by Chapter 13 Trustee Pursuant to 11 U.S.C. § 1326(b)(1)," seeking payment of $1,529.22 in outstanding attorney's fees and requesting, if necessary, the Trustee recover the sums previously paid to the Office of Child Support Services. These are core proceedings within the meaning of

28 U.S.C. §§ 157(b)(2)(A) and (G). For the reasons ·discussed below, Debtor's attorney's Motion to Direct Payments is granted in part and Wells Fargo's Motion for Relief is denied as moot.

### FINDINGS OF FACT

- Debtor filed for chapter 13 bankruptcy relief on February 16, 2007.
- Debtor owns a 1998 Ford Mustang GT convertible ("Vehicle") and his bankruptcy schedules list Wells Fargo as a secured creditor holding a purchase money security interest in the Vehicle.
- Debtor is single with two children ages 13 and 9, for whom he pays child support.[1]
- The Office of Child Support filed a proof of claim asserting a priority claim in the amount of $1,529.22 for past due child support.
- Under the terms of Debtor's confirmed bankruptcy plan, Debtor is to make plan payments in the amount of $544.00/month for at least three years.
- The plan provides for payment of the Trustee's commission and $2,500.00 in attorney fees for Debtor's counsel pursuant to § 507(a)(2).
- Other § 507 claims are to be paid in full over the life of the plan as funds become available.
- The plan estimates Wells Fargo's claim at $13,176.00 with 8.25% interest; however, the plan leaves the exact payment amount to the discretion of the Trustee.

- Wells Fargo filed a secured claim in the amount of $13,718.01.
- The plan provides for Wells Fargo to receive pre-confirmation adequate protection payments of $50.00/month. The Trustee timely paid the only pre-confirmation adequate protection payment that came due in this case.
- The only other secured creditor is the Georgia Department of Revenue, who filed a proof of claim in the amount of $3,844.09.
- Wells Fargo did not object to confirmation of Debtor's plan and an order confirming the plan was entered on April 9, 2007.[2]
- Post-confirmation, the Trustee began disbursing funds to: the Office of Child Support for its arrearage claim; the Court for filing fees; and the Trustee for his commission.
- Initially, these payments were made to the exclusion of all other payments, including those to Debtor's attorney's fees, and secured creditors, such as Wells Fargo.
- Disbursements to Debtor's attorney started in July of 2007, but Wells Fargo did not receive its first post-confirmation disbursement until January 2008, almost one year after the bankruptcy petition was filed.
- On August 21, 2007, Wells Fargo filed its motion for relief from the automatic stay.
- Two days later, Debtor's attorney filed a motion to compel payments seeking $1,529.22 in attorney's fees and requesting, if necessary, an order re-

---

1. Debtor testified to paying $1,200.00/month in child support to the mother of his son. Debtor also testified to paying child support to the mother of his daughter. According to Debtor, there is no set amount for this payment, nor is there any written agreement controlling this payment.

2. The only party to object to confirmation was the Trustee and he objected to an unrelated matter involving Debtor's proposed surrender of personal property in satisfaction of a debt. This matter was resolved and Debtor's plan was confirmed.

quiring the Trustee to recover sums previously paid to the Office of Child Support Services.

- At the hearing, Wells Fargo stated it had no real interest in obtaining possession of the Vehicle, and acknowledged it had not objected to confirmation of Debtor's proposed plan.
- In its post-hearing brief, Wells Fargo states it "is amenable to receiving the pre-confirmation payment of $50.00 for the intervening months since confirmation. However, going forward ... [Wells Fargo] is entitled to receive a minimum of $132.00 a month, which is the average interest payment until attorney's fees are paid." (Wells Fargo Br. at 7, Dckt. No. 43.)
- Under this analysis, Wells Fargo would be satisfied if it received at least $978.00 [3] as of March 2008.
- As of March 4, 2008, the Trustee has made the following disbursements in this case: [4]

3. Debtor was to commence making payments in March 2007. From March 2007 through November 2007 (the month Wells Fargo filed its brief), Wells Fargo indicates it would accept $450.00 ($50.00 times 9 months). From December 2007 through March 2008, Wells Fargo indicates it would accept no less than $528.00 ($132.00 times 4 months). Adding these sums together, Wells Fargo would be satisfied if it received at least $978.00. For purposes of this calculation, I have ignored the fact that the Trustee only disburses at the beginning of the month.

4. In addition, to the disbursements set forth above, the Trustee also made disbursements for court costs and his commission. As these payments are not in issue, they are not set forth above.

5. 11 U.S.C. § 1322(a)(2) states in pertinent part

   (a) The plan shall—
   .
   .
   .

| Wells Fargo | |
|---|---|
| Pre-confirmation adequate protection | $ 50.00 |
| Monthly disbursements | $ 468.07 |
| Interest | $1,032.76 |
| Total to Wells Fargo: | $1,550.83 |
| | |
| Georgia Dept. of Rev. | |
| Monthly disbursements | $ 41.58 |
| Interest | $ 87.92 |
| | |
| Office of Child Support | $1,529.22 |
| | |
| Debtor's counsel | $2,500.00 |

## CONCLUSIONS OF LAW

■ The issues before the Court involve the proper order of distribution in chapter 13 cases. Pursuant to § 1322(a)(2),[5] a plan must provide for full payment of all § 507 priority claims. 11 U.S.C. § 1322(a)(2). Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), domestic support obligations moved from seventh to first priority. 11 U.S.C. § 507(a).[6] BAPCPA added several other sections to the Bankruptcy Code to ensure collection of domestic support obligations in chapter 13 cases.[7] However, under § 507(a)(1)(C), domestic support obligations are subject to certain trustee ad-

(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim. . . .

6. 11 U.S.C. § 507(a)(1) states in pertinent part:

   (a) The following expenses and claims have priority in the following order:
   (1) First:
   (A) Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed ...
   (C) If a trustee is appointed or elected under section ... 1302, the administrative expenses of the trustee allowed under paragraphs (1)(A), (2), and (6) of section 503(b) shall be paid before payment of claims under subparagraphs (A) and (B), to the extent that the trustee administers assets that are otherwise available for the payment of such claims.

7. See §§ 1307, 1325 and 1328.

ministrative expenses. 11 U.S.C. § 507(a)(1)(C); *In re Reid*, 2006 WL 2077572, at *2 (Bankr.M.D.N.C.2006). Furthermore, § 1326(b)(1)[8] establishes the distribution scheme for chapter 13 cases and it provides that the Trustee is to pay § 507(a)(2)[9] claims before or at the same time as other payments to creditors. 11 U.S.C. § 1326(b)(1).

Section 507(a)(2) claims are "administrative expenses allowed under section 503(b) ... and any fees and charges assessed against the estate [for court related costs and fees]." 11 U.S.C. § 507(a)(2). Section 503(b) allows for administrative expenses, including among other things, those "actual, necessary costs and expenses of preserving the estate ... [and] compensation and reimbursement awarded under section 330(a)." 11 U.S.C. §§ 503(b)(1)(A) and (2). This District's chapter 13 plan form provides for attorney's fees as § 507(a)(2) expenses and General Order 2007–6 details debtors' attorney's fees as § 330(a) expenses.

BAPCPA amended § 1326(b)(1) by replacing the reference to § 507(a)(1), with § 507(a)(2).

> [B]y striking out the reference to § 507(a)(1) and replacing it with a reference to § 507(a)(2), the subsection that now governs administrative claims, including attorney's fees ... [t]he court can only conclude that Congress made the affirmative decision to maintain the pre-BAPCPA treatment of administrative claims in Chapter 13 plans.

*In re Reid*, 2006 WL 2077572, at *2 (Bankr.M.D.N.C.2006).

Based upon the plain language of § 1326(b)(1), § 507(a)(2) claims must be paid before, or concurrently with, payments to other creditors. *See In re Boler*, 2008 WL 205579, at *3 (M.D.Ala.2008) (holding plain language of § 1326(b)(1) requires administrative expenses to be paid before such domestic support obligations). *Accord In re Brown*, 2008 WL 205578, at *3 (M.D.Ala.2008); *In re Sanders*, 341 B.R. 47, 51–52 (Bankr.N.D.Ala.2006); *In re Vinnie*, 345 B.R. 386, 388–89 (Bankr. M.D.Ala.2006); *In re Reid*, 2006 WL 2077572, at *2 (Bankr.M.D.N.C.2006). Therefore, I conclude the Trustee should not have paid the Office of Child Support Services' arrearage claim ahead of Debtor's counsel or other secured creditors. Nevertheless, it appears as though the Trustee has now paid Debtor's counsel in full and brought disbursements to secured creditors current, and therefore I do not find it necessary to compel the Trustee to seek turnover of funds from the Office of Child Support Services.

■■■ The next issue to address is the priority of payments between Debtor's counsel and other secured creditors, such as Wells Fargo. In chapter 13 cases, debtors are required to commence making payments within 30 days of the date they file their petition. 11 U.S.C. § 1326(a)(1). Before confirmation, the only distributions the Trustee makes are for: pre-confirmation adequate protection payments on allowed secured claims, certain lease pay-

---

8. Section 1326(b)(1) states in pertinent part:
   (b) Before or at the time of each payment to creditors under the plan, there shall be paid—
   (1) any unpaid claim of the kind specified in section 507(a)(2) of this title.

9. 11 U.S.C. § 507(a)(2) states in pertinent part:

(a) The following expenses and claims have priority in the following order:
(2) Second, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

ments and the Trustee's commission. 11 U.S.C. § 1326(a)(2); General Order 2005–5. Prior to BAPCPA, the time period between the commencement of plan payments and confirmation was longer, allowing the Trustee to garner more funds to disburse at confirmation. However, BAPCPA has accelerated confirmation of chapter 13 cases, requiring confirmation hearings be held within 45 days after the date of the first meeting of creditors. 11 U.S.C. § 1324(b).

> By telescoping the time between the petition and the confirmation hearing, § 1324(b) not only hastens the start of payment distributions to creditors under the plan, but also reduces the amount of pre-confirmation money available to pay administrative expenses, including attorney's fees, in districts that previously delayed confirmation until after the claims bar date.

*In re Denton,* 370 B.R. 441, 445 (Bankr. S.D.Ga.2007).[10] In addition, under BAPCPA, there are more claims competing for these initial funds. Section 1325(a)(5) [11] was amended by BAPCPA to provide if payments on allowed secured claims are "to be distributed in the ... form of periodic payments, such payments shall be in equal monthly amounts." 11 U.S.C. § 1325(a)(5)(B)(iii)(I). Furthermore, if a claim is secured by personal property, the payment "shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan." 11 U.S.C. § 1325(a)(5)(B)(iii)(II). These two provisions changed the "mathematics of Chapter 13 plans with side effects for the payment of attorney fees." 5 Keith M. Lundin, *Chapter 13 Bankruptcy* § 442.1, p. 442–2 (3d ed. 2000 & Supp.2007–1).

> Chapter 13 debtors' attorneys who receive some or all of their fees through the plan must construct the plan so that distributions to the attorney do not threaten the availability of funds to make required equal installment payments to lienholders that are sufficient to provide adequate protection after confirmation. The collision of these stakeholders—the attorney armed with a priority claim and the lienholder entitled to adequate protection and equal monthly payments—will require more careful calculation of the funding of Chapter 13 plans after BAPCPA. Attorneys in some districts may have to adjust their practices to take smaller fee payments over a longer time in Chapter 13 cases.

*Id.* at 442–3.

Since BAPCPA, several courts have attempted to provide for these competing

---

10. In this District, chapter 13 confirmation may be extended since a plan may not be confirmed prior to the payment of the filing fee. Upon application, and for cause, Bankruptcy Rule 1006(b) allows the filing fee to be paid over a 180–day period. During this time pre-confirmation plan payments accumulate and upon confirmation may be used to pay the attorney fees and other administrative expenses. *See In re Denton,* 370 B.R. at 445 n. 6.

11. 11 U.S.C. § 1325(a)(5)(B)(iii) states in pertinent part:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(5) with respect to each allowed secured claim provided for by the plan—
(iii) if—
(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan.

claims by creating a two-tier post-confirmation payment system. This two-tier system is designed to allow debtors' attorneys to be paid in full prior to the commencement of equal monthly payment provision of § 1325(a)(5)(B)(iii)(I). These courts conclude adequate protection payments may continue post-confirmation as superpriority administrative expenses under § 507(b) until debtor's counsel is paid in full. Once debtor's counsel is paid in full, equal monthly payments of § 1325(a)(5)(B)(iii)(I) commence. *See In re DeSardi,* 340 B.R. 790, 802–803 (Bankr. S.D.Tex.2006) (concluding equal monthly payments required by § 1325(a)(5)(B)(iii)(I) means payments must be equal once they begin, not that such equal monthly payments must begin at the first post-confirmation distribution; and allowing post-confirmation adequate protection payments as § 507(b) superpriority administrative expenses). *See also In re Erwin,* 376 B.R. 897, 902 (Bankr. C.D.Ill.2007) (the equal monthly payments referred to in § 1325 require equal monthly payments from the debtor, not the Trustee, and prevents the debtor from backloading his payments to secured creditors); *In re Hill,* 2007 WL 499622, at *6 (Bankr. M.D.N.C.2007) (concluding post-confirmation adequate protection payments do not need to be the same as the equal monthly payments, but must be in an amount sufficient to provide adequate protection to such claimants); *In re Blevins,* 2006 WL 2724153, at *2 (Bankr.E.D.Cal.2006) (stating § 1325(a)(5)(B)(iii)(I) does not require equal payments be made over the life of the plan); *In re Chavez,* 2008 WL 624566, at *1 (Bankr.S.D.Tex.2008) ("[I]f the property to be distributed to the secured creditor under the plan takes the form of periodic payments, the payments shall be in equal monthly amounts once they begin and continue to be equal until they cease. It does not require that such payments

begin on the effective date of the plan or that they continue over the life of the plan.")

Conversely, in this District, Judge Dalis, in *In re Denton,* 370 B.R. 441 (Bankr. S.D.Ga.2007) found nothing in the Bankruptcy Code to support this two-tier interpretation. Judge Dalis points out these courts appear to treat "periodic payments" as a defined term, meaning "payments on an amortized debt, thus creating and artificially distinguishing a counterpart to 'adequate protection payments,' which bankruptcy practitioners have long understood as a term of art." *Id.* at 445. There is nothing in the Bankruptcy Code to lead one to conclude that the words "periodic payments" mean anything different than the common understanding of "payments that recur at regular intervals." *Id.*

It follows that pre-confirmation adequate protection payments may not be extended beyond the date of confirmation when the monthly amount of the adequate protection payment is less than the monthly amount of payment on the allowed secured claim under the plan. This scenario, in which post-confirmation payments characterized as "adequate protection payments" are less than post-confirmation payments characterized as "periodic payments," is precisely the "solution" to the problem of attorney's fees endorsed in *In re DeSardi, In re Hill,* and *In re Blevins.* Because all periodic payments to a secured creditor post-confirmation must be in equal monthly amounts, this solution is not consistent with the requirements of the Code.

*Id.* at 446.

■ I agree with the *Denton* analysis. The term "periodic payments" refers to all recurring post-confirmation payments to be made to secured creditors, such as Wells Fargo. Unless the creditor agrees

otherwise, the plan must provide for such creditors to receive equal monthly payments beginning with the first distribution post-confirmation *and* the payment amount must be sufficient to provide adequate protection during the period of the plan. 11 U.S.C. §§ 1325(a)(5)(B)(iii)(I) and (II). The use of "and" as a conjunctive requires the two phrases be applied together.

Section 1325 sets forth the confirmation criteria for chapter 13 plans. Plans failing to comply with § 1325(a)(5)(B) are not confirmable, unless the creditor accepts contrary treatment or the debtor surrenders the property. *See* 11 U.S.C. § 1325(a)(5). Debtors' counsel need to calculate plan payments sufficient to provide for these payments and for payment of attorney fees and other administrative expenses. *Denton,* 370 B.R. at 446 (stating creditors must start receiving payments in equal monthly amounts beginning with the first post-confirmation disbursement).

■ In the current case, Wells Fargo has not received equal monthly payments after confirmation. In fact, Wells Fargo only received $50.00 for the entire eleven month period following the petition date. As a result of this lack of funding, Wells Fargo would be entitled to relief from the automatic stay under 11 U.S.C. § 362(d)(1);[12] however, at the hearing and in its post-hearing brief, Wells Fargo indicated it had no real desire for relief from the stay. To this end, Wells Fargo made

certain concessions trying to reach a solution—"[F]or purposes of this case, [Wells Fargo] is not arguing that the 'periodic payments' referred to in § 1325(a)(5)(B)(iii)(I) must begin immediately post-petition." (Wells Fargo Br. at 4, Dckt. No. 43.) "[Wells Fargo] is amendable to receiving the pre-confirmation payment of $50.00 for the intervening months since confirmation. However, going forward … [Wells Fargo] is entitled to receive a minimum of $132.00 a month, which is the average interest payment until attorney's fees are paid." (*Id.* at 7.) As previously discussed, Wells Fargo has received sums sufficient to satisfy its request, therefore, Wells Fargo's motion for relief is moot.

It is therefore ORDERED, the "Motion by Attorney for Debtor for Order to Compel Payments by Chapter 13 Trustee Pursuant to 11 U.S.C. § 1326(b)(1)" is GRANTED to the extent it seeks a determination that the Office of Child Support's arrearage claim should not have been paid to the exclusion of Debtor's counsel. It is FURTHER ORDERED, that Wells Fargo's Motion for Relief from Stay is DENIED as MOOT.

---

12. Relief from the stay may be granted under 11 U.S.C. § 362(d)(1):

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest.